Filed 12/8/20  P. v. Jones CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B300320 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. GA051109 |
| MARC ANTHONY JONES, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Teri Schwartz, Judge. Affirmed.

Adrian K. Panton, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Acting Senior Attorney General, Charles S. Lee and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (SB 1437), effective January 1, 2019, amended the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder. Under Penal Code section 1170.95,[1] a person who was convicted under theories of felony murder or murder under the natural and probable consequences doctrine, and who could not be convicted of murder following the enactment of SB 1437, may petition the sentencing court to vacate the conviction and resentence on any remaining counts.

In 2004, a jury convicted defendant and appellant Marc Anthony Jones of first degree murder. In 2019, he filed a petition for recall and resentencing under section 1170.95. The trial court denied the petition, concluding Jones was ineligible for relief as a matter of law because he was not convicted under a felony-murder or natural and probable consequences theory of liability. On appeal, Jones argues the trial court erred under state law and in violation of his federal constitutional rights by summarily denying his petition without first appointing counsel. We affirm.

## PROCEDURAL BACKGROUND

In 2004, a jury convicted Jones of first degree murder (§ 187, subd. (a)) and found true the allegation that he personally and intentionally discharged a firearm (§ 12022.53, subd. (d)). The trial court sentenced him to 50 years to life in state prison.

---

1    All undesignated statutory references are to the Penal Code.

In 2019, Jones filed a petition for resentencing under section 1170.95. In the petition, Jones checked the boxes indicating an information was filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; at trial, he was convicted of first or second degree murder under the felony-murder rule or the natural and probable consequences doctrine; and he could not now be convicted of first or second degree murder because of the changes in homicide law. Jones requested that counsel be appointed on his behalf.

The trial court denied the petition, concluding Jones was ineligible for relief as a matter of law because the record did not show he was convicted under a felony-murder or natural and probable consequences theory of liability. In denying the petition, the court noted Jones shot the victim multiple times during a domestic dispute, was convicted of first degree murder, the jury found true a personal use firearm allegation, and the appellate court decision noted the evidence overwhelmingly demonstrated he harbored an intent to kill. The court also denied Jones's motion for reconsideration.

Jones timely appealed.

## FACTUAL BACKGROUND[2]

"On February 2, 2004, appellant Marc Anthony Jones was convicted of the first degree murder of Shanae Monique Jordan.

---

2    We take judicial notice of our opinion in case number B173809, filed July 28, 2005, resolving Jones's direct appeal. (See Evid. Code, § 452, subd. (a).) The following facts are taken from that opinion.

In addition, the jury found to be true the allegation that he had personally and intentionally discharged a handgun in the commission of a crime.

"[Jones] did not deny having shot and killed Jordan. In a police interview a few hours after the shooting, [Jones] claimed that he had brought mail and money to the house at 253 West Howard, where Jordan was living after having moved out of the apartment that he shared with her. He told the police that when he arrived, he and Jordan got into a 'scuffle,' in which she reached for the gun, making him angry, and that he hit her on the head with the gun in order to shut her up, because she was being 'nasty.' [Jones] claimed that the gun somehow went off when he hit her." (*People v. Jones* (Jul. 28, 2005, B173809) [nonpub. opn.].)

Susan Herrera, Jones's next-door neighbor, testified she had begun hearing arguments between Jones and Jordan about a month before Jordan moved out. Herrera also testified that she witnessed Jones grab Jordan and hold her in place during one argument. Herrera asked Jordan if she was alright and asked Jones to let her go. Jordan replied: "No, I want to get out of here." Herrera again asked Jones to let Jordan go, and he said, "She don't want to leave the apartment. If she left the apartment she would just go see her boyfriend," and "She's not going nowhere Susan," before eventually letting her go.

Sharon Strong had been living with Jordan at the house where the shooting occurred. Strong was close friends with both Jordan and Jones. She had known Jones all her life, and she became close friends with Jordan after Jones introduced them. At trial, Strong testified that on the day of the shooting, Jones called

her and told her he had snapped, shot Jordan several times, and killed her.

## DISCUSSION

### The Trial Court Correctly Denied Jones Relief under Section 1170.95

#### A. Governing Principles

#### 1. SB 1437's Limitation of Accomplice Liability for Murder

The legislature enacted SB 1437 "to amend the felony-murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) SB 1437 amended section 189 to provide that a participant in qualifying felonies during which death occurs generally will not be liable for murder unless the person was (1) "the actual killer," (2) a direct aider and abettor in first degree murder, or (3) "a major participant in the underlying felony [who] acted with reckless indifference to human life[.]" (§ 189, subd. (e).)[3]

SB 1437 also "added a crucial limitation to section 188's definition of malice for purposes of the crime of murder." (*People*

---

3    This limitation does not apply "when the victim is a peace officer who was killed while in the course of the peace officer's duties, where the defendant knew or reasonably should have known that the victim was a peace officer engaged in the performance of the peace officer's duties." (§ 189, subd. (f).)

5

*v. Verdugo* (2020) 44 Cal.App.5th 320, 326, rev. granted, S260493, Mar. 18, 2020 (*Verdugo*).) Under new section 188, subdivision (a)(3), "'[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' [Citations.]" (*People v. Lewis* (2020) 43 Cal.App.5th 1128, 1135 (*Lewis*), rev. granted, S260598, Mar. 18, 2020.)[4] "As a result, the natural and probable consequences doctrine can no longer be used to support a murder conviction. [Citations.]" (*Ibid.*)

## 2. Petitions to Vacate Prior Convictions

SB 1437 also added section 1170.95 to the Penal Code. This section permits individuals who were convicted of felony murder or murder under a natural and probable consequences theory, but who could not be convicted of murder following SB 1437's changes to sections 188 and 189, to petition the sentencing court to vacate the conviction and resentence on any remaining counts. (§ 1170.95, subd. (a).) A petition for relief under section 1170.95 must include: "(A) A declaration by the petitioner that he or she is eligible for relief under this section, based on all the

---

4     The review order in *People v. Lewis* states: "The issues to be briefed and argued are limited to the following: (1) May superior courts consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under Penal Code section 1170.95? (2) When does the right to appointed counsel arise under Penal Code section 1170.95, subdivision (c)." (*Lewis*, S260598, Supreme Court Mins., Mar. 18, 2020.) The review order in *Verdugo* states: "Further action in this matter is deferred pending consideration and disposition of a related issue in *People v. Lewis*, S260598 (see Cal. Rules of Court, rule 8.512(d)(2)), or pending further order of the court." (*Verdugo*, S260493, Supreme Court Mins., Mar. 18, 2020.)

requirements of subdivision (a). [¶] (B) The superior court case number and year of the petitioner's conviction. [¶] (C) Whether the petitioner requests the appointment of counsel." (§ 1170.95, subd. (b)(1).) If any of the information is missing "and cannot be readily ascertained by the court, the court may deny the petition without prejudice to the filing of another petition and advise the petitioner that the matter cannot be considered without the missing information." (§ 1170.95, subd. (b)(2).)

If the petition contains the required information, section 1170.95, subdivision (c), prescribes "a two-step process" for the court to determine if it should issue an order to show cause. (*Verdugo*, *supra*, 44 Cal.App.5th at p. 327.) First, the court must "review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section." (§ 1170.95, subd. (c).) If the petitioner has made this initial prima facie showing, and has requested that counsel be appointed, he or she is then entitled to appointed counsel. (*Ibid.*; *Lewis*, *supra*, 43 Cal.App.5th at p. 1140 ["trial court's duty to appoint counsel does not arise unless and until the court makes the threshold determination that petitioner 'falls within the provisions' of the statute."].) The court then reviews the petition a second time. If, in light of the parties' briefing, it concludes the petitioner has made a prima facie showing that he or she is entitled to relief, it must issue an order to show cause. (§ 1170.95, subd. (c); *Verdugo*, *supra*, 44 Cal.App.5th at p. 328.)

"Once the order to show cause issues, the court must hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts." (*Verdugo*, *supra*, 44 Cal.App.5th at p. 327, citing § 1170.95, subd. (d)(1).) At the hearing, the parties may

rely on the record of conviction or present "new or additional evidence" to support their positions. (§ 1170.95, subd. (d)(3).)

## B. The court did not err by denying Jones's petition without appointing counsel

On appeal, Jones argues the trial court erred by summarily denying his petition without appointing counsel and allowing additional briefing. Jones's claims regarding the procedures section 1170.95 affords raise questions of law subject to de novo review. (See *In re T.B.* (2009) 172 Cal.App.4th 125, 129 [interpretation of statute reviewed de novo].) Applying this standard, we reject Jones's contention.

The trial court could conclude, as it did, at the first stage of the section 1170.95 analysis, that Jones was ineligible for relief as a matter of law. (*Verdugo, supra*, 44 Cal.App.5th at p. 329 ["The court's role [at the preliminary eligibility determination stage] is simply to decide whether the petitioner is ineligible for relief as a matter of law . . . ."].) The court file in no way suggests Jones was convicted on a felony-murder or natural and probable consequences theory. Consequently, as the trial court correctly concluded, the record of conviction shows Jones is statutorily ineligible for relief. (See § 1170.95, subd. (a). [section 1170.95 applies only to individuals "convicted of felony murder or murder under a natural and probable consequences theory . . . ."]; *Verdugo, supra*, 44 Cal.App.5th at p. 329 [in determining whether a petitioner is ineligible for relief as a matter of law, the trial court may evaluate "documents in the court file or otherwise part of the record of conviction that are readily

ascertainable . . . ."].) The record shows Jones was convicted on the theory that he was the actual killer.

Finding no error in the court's conclusion that Jones was ineligible for relief as a matter of law, we reject Jones's argument that the court erred by not appointing counsel. (*Verdugo*, *supra*, 44 Cal.App.5th at pp. 332-333 ["If, as here, the court concludes the petitioner has failed to make the initial prima facie showing required by subdivision (c), counsel need not be appointed."].)

We lastly reject Jones's argument that the trial court violated his constitutional rights by not appointing counsel. "[T]he retroactive relief . . . afforded by Senate Bill 1437 is not subject to Sixth Amendment analysis." (*People v. Anthony* (2019) 32 Cal.App.5th 1102, 1156.) "[T]he Legislature's changes constituted an act of lenity that does not implicate defendants' Sixth Amendment rights." (*Ibid.*) We likewise conclude the court's denial of Jones's petition without appointing counsel did not violate his federal constitutional rights to due process.

The trial court followed the proper procedures and correctly denied Jones's petition.

## DISPOSITION

The order denying Jones's petition under section 1170.95 is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, J.


We concur:



MANELLA, P.J.



WILLHITE, J.

10